## THE STATE OF KANSAS v. ANDREW M. BOWEN.

1. CRIMINAL LAW; *Verdict to be Construed as a Whole.* Under an information charging murder in the second degree, this verdict was returned: "We the jury find the defendant not guilty in manner and form as charged in the information, but do find him guilty of manslaughter in the second degree." *Held,* that all the parts of the verdict should be considered in determining its effect, and that so considered, it was evident that the jury only intended to acquit of the major crime in terms charged, to-wit, that of murder in the second degree, and did not intend to acquit of the lesser offenses, the different degrees of manslaughter included therein.

2. JUDICIAL NOTICE, *Taken of All Prior Proceedings in an Action.* The court takes judicial notice of all prior proceedings in a case, and it is unnecessary to offer evidence of a former trial, and the verdict returned on such trial, on the hearing of a plea in bar of "once in jeopardy" by such trial and verdict.

3. QUESTIONS OF LAW — *Exclusively for the Court.* Where the question is purely one of law, it is, although arising in a criminal case, one exclusively for the court.

4. INFORMATION FOR MURDER; *Venue; Place of Death.* An information for murder is sufficient which charges the giving of the fatal blow in the county in which the prosecution is had, and the fact of ensuing death, although it failed to allege specifically in what county or state the death took place.

*Appeal from Wilson District Court.*

INFORMATION for murder — the information charging that *Bowen,* "at the county of Wilson, on the 10th of October 1874, with a double-edged dagger or stiletto, purposely and maliciously did inflict two mortal wounds in and upon the side and abdomen of one John Hoppeler, then and there being, of which said two mortal wounds the said John Hoppeler afterward, and on the 13th of October 1874, died." Plea, not guilty. There were two trials — the first at the November Term 1875, at which a verdict was set aside and a new trial granted. A second trial was had at the February Term 1876. Verdict, "guilty of manslaughter in the fourth degree," and *Bowen* was sentenced to "imprisonment in the county jail for a period of nine months." From this judgment and sentence the defendant appeals.

*Kirkpatrick & Hudson,* for appellant.

The opinion of the court was delivered by

BREWER, J.: Appellant was convicted of manslaughter in the fourth degree, under an information charging murder in the second degree; and from such conviction brings this appeal. Three questions are presented.

I. Two trials were had. Upon the first, the jury returned the verdict, "We the jury find the defendant not guilty in manner and form as charged in the information, but do find him guilty of manslaughter in the second degree." Upon this defendant moved to be discharged, on the ground that, as murder includes all the degrees of manslaughter, the information in fact charged all those degrees, and the first part of the verdict finding him "not guilty in manner and form as charged," was responsive to all the charges, and acquit-

1. Verdict to be construed as a whole. ted him of guilt, not only as to murder, but as to all the degrees of manslaughter; and that therefore the latter part of the verdict must be disregarded as surplusage. The point was not well taken. The verdict must be taken as a whole, and its meaning determined from a consideration of every part. So taken, there is no chance for misconception as to the meaning of the jury. It finds the defendant guilty of a crime, and states the crime of which it finds him guilty. That crime is included in the offense charged, and the verdict of guilty is good under the information. So much as declares the defendant not guilty, is plainly, when taken in connection with the other part of the verdict, to be limited to the major offense in terms charged.

II. After the motion to discharge defendant had been denied, a motion for a new trial was sustained. Before the second trial the defendant entered a plea in bar of "once in jeopardy," and by it presented anew the question of the effect of said verdict. Upon this plea he demanded that the 2. Judicial notice taken of all prior proceedings. state be compelled to demur, or reply, and also that a jury be called to try the truth of the plea; but the court refused. Now whatever might have been the proper course, if the plea had raised a question of fact to be settled upon evidence, we see nothing in the ruling here of which defendant has cause to complain. All that was presented was as to the effect of a prior proceeding in the case. Upon this, no testimony was required, because the proceedings of record had in a case are always taken judicial 3. Questions of law. notice of. It was a question of law, as to the effect of a certain verdict, which it was proper for the court to determine; and changing the mere form of presenting the question, did not affect the right of the court to determine it.

III. It is claimed that the information is insufficient, in that it fails to allege the place of the death. It charges that 4. Indictment; homicide; place of death. on the 10th of October 1874, at the county of Wilson, the defendant inflicted two mortal wounds upon John Hoppeler, of which wounds the said Hoppeler af-

terward, and on October 13th 1874, died, but it does not charge that he died in Wilson county, or in the state. Hence it is said, that as the offense of murder or manslaughter is consummated only by the death of the party assailed, the place of the death is as important as the place of the assault, and that a failure to allege the one is as fatal as a like failure to allege the other. Waiving any question as to the effect of the second clause of § 110 of the criminal code, (Gen. Stat., p. 838,) and conceding that except upon a strained and unnatural construction there is no allegation as to the place of Hoppeler's death, we still think the information must be sustained. It does not appear that any question was raised in the district court as to the sufficiency of the information. The defendant plead "not guilty," and went to trial upon it. Perhaps this is immaterial, and the defendant has waived nothing. There has been much confusion and conflict as to the jurisdiction and power to punish in cases in which the fatal blow is given in one county or state, and death ensues in another county or state. So far as counties are concerned, the statute settles all question. (Gen. Stat., p. 824, § 29.) It is however silent as to cases in which the wound is given outside the state and death ensues within, or the reverse. In *The State v. Carter*, 3 Dutch. 400, the power of the state to punish, was denied in a case where the fatal blow was given in New York and the injured party voluntarily came into New Jersey and there died. On the other hand, the power was sustained under similar circumstances in the cases of *Tyler v. The People*, 8 Mich. 320, and *Commonwealth v. Macloon*, 101 Mass. 1, in which last case is a very full and exhaustive examination of the authorities, English and American. In the case in 8 Mich. is a dissenting opinion by Judge Campbell, whose judgment in criminal questions is entitled to the highest consideration, in which he holds the law to be, in the absence of statute, that jurisdiction to punish for the homicide is in the state and county in which the fatal blow was struck. In *Riley v. The State*, 9 Humph. 646, the supreme court of Tennessee decided that according to the principles of

common law, where the fatal .blow was given in one county, and death ensued in another, jurisdiction of the homicide was in the first county. In *State v. McCoy*, 8 Rob. Rep. 545, followed in *State v. Foster*, 7 La. An. 255, and same cases in 8 La. An. 290, the supreme court sustained the jurisdiction where the fatal blow was given within but death ensued without the state. They rested their decision however, it should be said, upon an act of the legislature of 1805 adopting the common·law of England, which they construed as including a statute of 2 Geo. II, upon this matter. In *The People v. Gill*, 6 Cal. 637, where intermediate the blow and the death a change in the statute had been made, the crime was held to be of the date of the blow, and governed by that law. See also, *Grosvenor v. St. Augustine*, 12 East, 244; 1 Bishop Cr. Law, §§ 112, 116; 1 Bishop Cr. Procedure, 51, 52, and cases cited on both sides of the question. [It seems to us, without pursuing the authorities further, reasonable to hold that as the only act which the defendant does toward causing the death is in giving the fatal blow, the place where he does that is the place where *he commits the crime*, and that the subsequent wanderings of the injured party, uninfluenced by the defendant, do not give an ambulatory character to the crime; at least, that those movements do not, unless under express warrant of the statute, change the place of offense; and that while it may be true that the crime is not completed until death, yet that the death simply determines the character of the crime committed in giving the blow, and refers back to and qualifies that act.] It follows, that there was no error in rendering a judgment against the defendant upon this information. No other question being presented, the judgment must be affirmed.

All the Justices concurring.