STATE OF MAINE *vs*. DENNIS KELLY.

Sagadahoc.    Opinion July 30, 1884.

*Murder.   Jurisdiction.   Fort Popham.*

The courts of this state have not jurisdiction of murder or manslaughter committed within Fort Popham near the mouth of Kennebec River.

When a mortal blow or wound is inflicted in a fort of the United States and the person struck or wounded, dies out of the fort, the crime cannot be regarded as committed where the person dies.

ON REPORT.

Indictment for the murder of Francis A. Smith by shooting and mortally wounding, July 29, 1882, within the limits of Fort Popham, a fort of the United States, from the effects of which shooting and wounding death ensued at Phipsburg, outside the limits of the fort, August 13, 1882.

The defendant pleaded in abatement to the jurisdiction of the court. Thereupon, Asa Bird Gardiner, Judge Advocate, U. S. A., and Wilbur F. Lunt, U. S. Attorney for the district of Maine, appeared in behalf of the United States, and presented the following claim to the jurisdiction :

" State of Maine, Sagadahoc, ss. Supreme Judicial Court, December Term, 1882. *The State of Maine*, by indictment, vs. *Dennis Kelly*.

"And now the above entitled cause having come on to be heard on the indictment therein, and the said defendant having filed a plea to the jurisdiction of this honorable court therein, and issue having been joined thereon, now therefore upon said indictment and plea to the jurisdiction and the several pleadings thereunder, the United States of America, by their duly authorized counsel, come into court and respectfully appraise this honorable court that the said United States claim exclusive jurisdiction and cognizance of the crimes alleged in said indictment and of the person of the said defendant to be proceeded against under the

laws of the said United States for the crimes in said indictment alleged.

" The attention of this honorable court is respectfully invited to the fact that the immediate action taken by the authorities of the State of Maine against the defendant for the alleged crimes and his early release upon bail have prevented the said United States from proceeding earlier in the premises or apprising this honorable court of its claim of exclusive jurisdiction, all of which is respectfully submitted.

Asa Bird Gardiner, Judge Advocate.

. Wilbur F. Lunt, U. S. attorney for Maine,

counsel for the United States of America."

" Bath, December 29th, 1882."

*Henry B. Cleaves*, attorney general, and *Frank J. Buker*, county attorney, for the State of Maine, cited : 1 Chitty Crim. Law, 177 ; *Goodwood's case*, 1 Leach C. C. L. 432 ; *King* v. *Coombs*, 1 Leach C. C. L. 169 ; *State* v. *Moore*, 26 N. H. 448 ; 2 Inst. 318 ; 1 Hale P. C. 427 ; *Com.* v. *Macloon*, 101 Mass. 8 ; *U. S.* v. *Bladen*, 1 Cranch C. C. 458 ; *King* v. *Hargrave*, 5 Car. & Paine, 510 ; *Com.* v. *Linton*, 2 Va. 205 ; *U. S.* v. *McGill*, 4 Dall. 427 ; *U. S.* v. *Armstrong*, 2 Curtis C. C. 446 ; *State* v. *Bowen*, 16 Kansas, 475 ; *License Case*, 5 How. 504 ; *U. S.* v. *De Witt*, 9 Wall. 44 ; Cooley Const. Lim. (3 ed.) 573 ; U. S. R. S., c. 2, § 1 ; R. S., c. 131, § 3 ; Opp. Att'y Gen. U. S., 199 ; *U. S.* v. *Cornell*, 2 Mason, 60 ; *State* v. *Underwood*, 49 Maine, 181 ; *Com.* v. *Parker*, 2 Pick. 550 ; St. 2 Geo. II, c. 21 ; *Tyler* v. *The People*, 8 Mich. 320 ; *Stoughton* v. *State*, 13 Smedes & M. 255 ; *Minnesota* v. *Gessert*, 21 Minn. 369 ; *U. S.* v. *Wells*, Dist. of Maine, 11 Am. L. Reg. 424 ; *Moore* v. *People of Illinois*, 14 How. 13 ; *Freeman* v. *Howe*, 24 How. 450 ; *Buck* v. *Coolbroth*, 3 Wall. 334 ; U. S. R. S., c. 5, § 1342 ; Articles of War, Art. 58 ; *Coleman* v. *Tenn*, 97 U. S. 509 ; Benet Courts Martial, 115 ; *Steiner's Case*, 6 Op. U. S. Att'y Gen'l 413 ; *Howe's Case*, 6 Op. U. S. Att'y Gen'l 511 ; *People* v. *Adams*, 3 Denio, 207 ; *Com.* v. *Roby*, 12 Pick. 496.

*Asa Bird Gardiner*, judge advocate, U. S. A. and *Wilbur F. Lunt*, U. S. attorney for the district of Maine, for the United States, cited: Stats. 1857, c. 115; 1862, c. 114; U. S. Const. Art. 1 § 8, par. 17; 1 Kent, Com. § 429; *U. S.* v. *Cornell*, 2 Mason C. C. 60; *U. S.* v. *Davis*, 5 Mason C. C. 356; *Com.* v. *Clary*, 8 Mass. 72; U. S. R. S., § § 5339, 5341; *Fox* v. *State of Ohio*, 5 How. 410; *Houston* v. *Moore*, 5 Wheat. 21; *Prigg* v. *Com. of Penn.* 16 Pet. 539; 1 Bishop Crim. Law, (7 ed.) § § 113, 115 and notes; 1 Bishop Crim. Pro. (2 ed.) § 51 and notes 6, 7; *Rex* v. *Burdett*, 4 Barn. & Ald. 358; *Regina* v. *Lewis*, 7 Cox Crim. Cas. 277; *Rex* v. *Hargrave*, 5 Car. & Payne, 510; *State* v. *Gessert*, 21 Minn. 369; *State* v. *Bowen*, 16 Kansas, 476; *Riley* v. *State*, 9 Humphrey's, 656; *People* v. *Gill*, 6 Cal. 637; *Green* v. *State*, 66 Ala. 41; *U. S.* v. *Charles J. Guiteau*, Official Report, Part III, 1838, 2578, 2634; *Stearns* v. *U. S.* 2 Paine, C. C. 300; *U. S.* v. *Bevans*, 3 Wheat. 386; *U. S.* v. *Holliday*, 3 Wall. 407; *U. S.* v. *Peters*, 5 Cranch, 115; *Slocum* v. *Mayberry*, 2 Wheat. 1.

*Washington Gilbert*, for the respondent.

WALTON, J.  The question is whether the courts of this state have jurisdiction of the crimes of murder or manslaughter committed within Fort Popham near the mouth of the Kennebec river.

We think they have not. Fort Popham is a United States fort. It is erected on land purchased for a fort; and the purchase was made by consent of the legislature of this state. The constitution of the United States declares that congress shall have power to exercise exclusive legislation over all places purchased by the consent of the legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings; and, in the exercise of this power, congress has enacted what the punishments for murder and manslaughter shall be when committed within any fort, arsenal, dock-yard, magazine, or other place under the jurisdiction of the United States, and conferred authority upon the federal courts to try the persons charged with these offenses.

The conclusion is, therefore, inevitable that, the courts of this state do not have jurisdiction of the crimes of murder or manslaughter committed in a United States fort. In fact, we do not know that this proposition is denied by any one.

But it is said that, although a mortal wound may. be inflicted within a fort, still, if the person wounded dies elsewhere, the crime must not be regarded as having been committed in the fort, but at the place where the person dies; and that in such a case, the courts of the latter place have jurisdiction. It is undoubtedly true that the courts of the latter place do sometimes have jurisdiction. But we are satisfied that when this is so, it is not because the crime is to be regarded as having been committed there, but because some rule of law, statutory or otherwise, expressly confers such jurisdiction. The modern and more rational view is that the crime is committed where the unlawful act is done, and that the subsequent death, while it may be sufficient to confer jurisdiction, can not change the locality of the crime.

And this brings us to the only question in relation to which there can be any doubt in this case; and that is, whether our statute, which declares that if a mortal wound is inflicted, or poison administered, on the high seas, or without the state, whereby death ensues within the state, such offense may be tried in the county where the death ensues. R. S., c. 131, § 3.

Perhaps it is a sufficient answer to say that this statute was not intended to apply to the United States forts which are within our state; that by. its terms it applies only to the high seas, and other places, without the state; that the purchase of land by the United States for a fort, while it confers upon congress the exclusive power to legislate for it, does not take the land out of the state. It is still within our territorial limits. But we do not rest our decision upon this ground. Another, and, as it seems to us, a conclusive answer is that, the power of congress to legislate for the territory on which a United States fort is erected, is declared by the federal constitution to be exclusive. Consequently, there can be no concurrent jurisdiction.\\
And any statute of the state, which should attempt to exercise

such a jurisdiction, must necessarily be unconstitutional and void. Congress has provided for the punishment of crimes committed within the forts of the United States. It has expressly provided for the punishment of murder and manslaughter. R. S., U. S. § § 5339, 5341, 5343. And conferred exclusive jurisdiction upon the federal courts. *Ib.* § 629, cl. 20. How, then, can a state court take jurisdiction? Clearly it can not, unless when a mortal blow or wound is inflicted in a fort, and the person struck or wounded, dies out of the fort, the crime is regarded as committed where the person dies; and this, as already stated, is a doctrine which we cannot sustain. It is condemned by the weight of modern authority, English as well as American, and is opposed to reason.

The authorities bearing on the question will be found in Bishop's Criminal Law, vol. 1, § § 69, 154; Bishop's Criminal Procedure, chap. 4; *Commonwealth* v. *Macloon et als.* 101 Mass. 1, and in the Report of Guiteau's Trial for the murder of President Garfield.

> *The plea in abatement is sustained, and the prisoner surrendered to the United States authorities.*

PETERS, C. J., DANFORTH, VIRGIN and LIBBEY, JJ., concurred.