# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

---

### JAMES H. KIRKHAM

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed November 8, 1897.*

1. INDICTMENT—*omission in indictment for murder, of averment that the deceased was a "human being" is not fatal.* The omission from the charging part of an indictment for murder, of the averment that the deceased was a *human being* in the peace of the People, is not fatal, as the name applied to the deceased imports a human being.

2. SAME—*effect of omission of word "same" preceding "People of the State of Illinois."* Concluding each count of an indictment with the words "against the peace and dignity of the People of the State of Illinois" instead of "against the peace and dignity of the *same* People," is not ground for quashing the indictment.

3. SAME—*averment of place of death is not a necessary averment.* The averment, in an indictment for murder, of the place where the death occurred is not necessary and need not be proven as laid.

4. SAME—*indictment returned in open court becomes part of record without filing.* An indictment returned by the grand jury in open court, as shown by the record, becomes part of the record at once, though the clerk does not file it, and the court may allow it filed, after verdict, *nunc pro tunc* as of the date it was returned.

5. CRIMINAL LAW—*court may permit names of witnesses to be endorsed on indictment at trial.* The trial court may, in its discretion, permit the names of witnesses to be endorsed upon an indictment at trial, and its action in so doing cannot be assigned for error.

6. SAME—*defendant may waive his right to pass upon jurors in panels of four.* A defendant may waive his right to pass upon jurors in panels of four, and the court may thereafter require him to pass upon jurors called singly or by twos or threes.

7. EVIDENCE—*what is immaterial in trial for murder.* Whether a witness for the prosecution in a murder trial had sent persons to secrete themselves in a room near the residence of the defendant to observe the effect upon him of information given him by his wife that a warrant was out for his arrest, is an immaterial and irrelevant circumstance.

8. SAME—*what sufficient to show declarations were made in contemplation of death.* Evidence that the deceased, who was a physician, expressed his conviction that the blow he had received would cause a clot to form on his brain and that his death would inevitably occur, and that he directed the disposition of property in contemplation of his death, which occurred some three weeks later, sufficiently shows that he had abandoned all hope of life.

9. SAME—*what sufficient to sustain conviction for murder.* Evidence that the defendant in a murder trial was seen going into an alley where the deceased was assaulted, shortly before the assault took place, and that he was seen running out of the alley a few minutes later, is sufficient, when considered with the dying declarations of the deceased that he had been struck upon the head with a hard substance by the defendant, to sustain a conviction.

WRIT OF ERROR to the Circuit Court of Hardin county; the Hon. A. K. VICKERS, Judge, presiding.

GEORGE W. PILLOW, for plaintiff in error.

E. C. AKIN, Attorney General, (D. C. HAGLE, C. A. HILL, J. A. LEDBETTER, H. R. FOWLER, and WHITNEL & GILLESPIE, of counsel,) for the People.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

Plaintiff in error was indicted and convicted of the crime of murder and sentenced to the penitentiary for a term of fourteen years. The evidence shows that on or about the 16th day of February, 1894, Newton L. Fowler,

a physician by profession, was assaulted and struck on the head with some hard substance, from which he died on the 7th day of March, following.

The plaintiff in error raises numerous questions by his assignments of error. It is first claimed that the court erred in not quashing the indictment, because in the conclusion of the charging part it is not averred that the deceased is a human being in the peace of the People. That question was passed upon by this court in *Palmer* v. *People*, 138 Ill. 356, where it was said (p. 362): "The first objection made to the second count of the indictment, as set forth in the motions to quash and in arrest, is that it contains no allegation that George Bopp, alleged to have been killed by the defendant, was a human being. This allegation is said to be necessary because section 140 of the Criminal Code defines murder to be 'the unlawful killing of a human being in the peace of the People, with malice aforethought, either express or implied.' It need not be averred that the deceased was a human being. The name imports a human being. The language of the indictment and the name applied to the deceased are always used to describe human beings." It is averred in the indictment that the assault was made upon the person of Newton L. Fowler, a human being then and there being. In the averment of the wounds on the head of Newton L. Fowler, which caused his death, it is not charged that he was a human being. It is clear that allegation is sufficient under any rule, and under the authority above quoted it is not necessary to make the averment claimed to have been improperly omitted.

It is further urged as error in overruling the motion to quash, that each count of the indictment concludes "against the peace and dignity of the People of the State of Illinois," instead of using the term "against the peace and dignity of the *same* People of the State of Illinois." Whilst the latter term is that used in the constitution, the omission of the word "same" does not vitiate the in-

dictment, and we hold there was no error in overruling the motion to quash.

The next contention of the plaintiff in error is, that the indictment averred the deceased died from the wounds so inflicted in Hardin county, Illinois, when it is shown that his death occurred in Evansville, Indiana. The averment as to the place of death is not a necessary averment, and where an averment in an indictment is of a matter unnecessary it is not always required to be proven. The place where the blow was inflicted is the place where the crime was committed, and it is wholly immaterial to what points the injured man wandered or was removed, or the extent to which he changed his place of residence, or where he died. The place of the offense is the one fact to be proven with reference to place, and the fact of death only determines the character of the crime, and relates back to that act and gives quality and fixes the character of the offense. *Nash* v. *State,* 2 Green, 286; *State* v. *Bowen,* 16 Kan. 475; *Ex parte McNeeley,* 36 W. Va. 64.

It appears that the indictment was returned into open court by the grand jury in a body, but the clerk failed to place his file-mark on the indictment at that time, and after verdict, on motion of the State's attorney, the court ordered the clerk to place his file-mark thereon at the date on which it was returned into open court as shown by the record, *nunc pro tunc,* to which plaintiff in error objected. The indictment having been returned into open court by the grand jury in a body, which fact was shown by the record, it became a part of the records of the court at once, and the omission of the clerk to place his file-mark thereon did not affect its legality or destroy its character. The record shows the indictment to be a part of the records, and the defendant was in nowise prejudiced by allowing, and it was not erroneous to allow, the file-mark to be placed thereon.

Previous to the commencement of the trial, on motion of the State's attorney, leave was granted to indorse on

the indictment, after notice, the names of witnesses, some twenty or thirty in number. Defendant objected, and his objection was overruled, to which he excepted. In *Gore* v. *People*, 162 Ill. 259, it was said (p. 265): "It is within the sound discretion of the court to allow witnesses to be examined whose names are not so endorsed on the indictment, and the exercise of that discretion cannot be assigned as error,"—and numerous cases in this State are there cited sustaining that proposition. It was not error to permit the endorsement of the names of witnesses on the indictment after notice, nor to permit their being called and examined.

It is then urged, that in the selection of the jury, after two panels of four jurors each had been accepted and sworn, counsel for the prosecution and for the defendant selected one other juror, waiving the right to have four jurors presented and sworn, and after the nine jurors were selected three were called into the box, who were examined and accepted by the State and one was challenged by the defendant, who then declined to pass upon the other two until the three jurors were in the box. The court held that the defendant, having consented to depart from the rule of having the four jurors tendered, could not afterwards insist on that rule, or that three should be tendered. The defendant had an undoubted right to waive his right of having four jurors tendered as a panel, (*Perteet* v. *People*, 70 Ill. 171,) and having waived his right there was no statute fixing the number which might be called, and it was within the discretion of the court, when the right to the panel of four was waived, to call one or three and require the parties to pass upon them, (*Walker* v. *Collier*, 37 Ill. 362,) and in so doing there was no error.

The State called as a witness one Thomas Robinson, whose testimony was prejudicial to the defendant. The defendant called William J. Blair and John Tyer, both residents of Cave-in-Rock, where Thomas Robinson re-

sided some years anterior to the trial. Robinson had for some years been a resident of Elizabethtown. Blair and Tyer were called as witnesses to impeach the general reputation of the witness Robinson for truth and veracity, their acquaintance with him and their knowledge of him existing whilst he was a resident of Cave-in-Rock. This testimony was objected to and the objection sustained by the court. This evidence was competent. (*Holmes v. Stateler*, 17 Ill. 453; *Blackburn* v. *Mann*, 85 id. 222.) Robinson, however, had been permanently a resident of Elizabethtown from the time he left Cave-in-Rock,—a period of over four years,—and was well known there. He was not a wandering person without a residence or place of abode, but had established not only a residence, but a reputation in Elizabethtown that was generally known. The defendant called four witnesses, residents of the latter city, by whom he introduced impeaching testimony as to Robinson. Whilst evidence as to the general reputation for truth and veracity of a witness who has resided at any particular place long enough to have established a reputation is admissible, its weight is for the jury. Where a witness has established a residence and made a reputation at another place at a later period, then, when called as a witness, the case is different from that of a wandering person, as in *Holmes* v. *Stateler*, and *Blackburn* v. *Mann, supra.* We do not hold the sustaining of objection to this evidence is reversible error.

Counsel for the defendant asked the witness H. R. Fowler, on cross-examination, whether or not he sent two persons to secrete themselves in a room near the residence of the defendant to notice the effect on him of information given by his wife of the fact that a warrant was out for him charging him with the murder of Newton L. Fowler. This question was objected to and the objection sustained. A question was also asked the witness F. M. Fowler as to whether the two persons so secreted gave any information or made any report to him,

which was objected to by counsel for the prosecution and the objection sustained, to which exception was taken, as also were objections sustained to the questions asked of the two persons so secreted. This evidence had no relevancy to the issue before the jury, and was immaterial and irrelevant, and it was not error to sustain the objection thereto.

It is contended by the plaintiff in error that the dying declaration admitted on the part of the State was not proper testimony. Newton L. Fowler, a physician by profession, about thirty-two years of age and a strong and healthy man, who was engaged in the practice of his profession, received a blow which fractured his skull. He was leaving his stable at a late hour of the night, when a man suddenly approached and struck him. He became unconscious, but within two hours revived and called out. A man who came to his relief got him into his house, and blood was found running from his nose, mouth and ears. His brothers were sent for, who took him to his home. On the next day his condition was critical and serious, and a day or two thereafter, against the view of other physicians, he declared the blow of such a character it would cause a clot to form on his brain and would result in his death. His conviction was that death was inevitable as a result of the blow. When it was proposed to take him to a sanitarium at Evansville and place him in charge of a surgeon he declared it was useless, as death was but a question of time, and declared the blow would kill him, and whilst he spoke of the blood clot and a trephine operation, and yielded assent to the wish expressed by others that he would recover, he still said that death would inevitably result. He was engaged to be married to a young lady whom he was aiding in procuring an education in music, and regretted that she would now have no one to aid her. He also expressed a desire as to the disposition of his effects. From the entire evidence we are satisfied that he had abandoned all hope of recovery

and absolutely believed that dissolution was near and inevitable, as a result of the injury he had received. His professional knowledge was such that he could diagnose his own condition, and the result shows that he did so with a greater degree of accuracy than the physicians, several in number, who were called to his aid. The evidence convinces us that he had abandoned hope shortly after his injury, and while in this condition he made the declaration with positiveness that he was struck by the defendant with a hard substance,—that the defendant rushed upon him and he received a blow. On several other occasions he declared that the blow was received at the hands of the defendant. We are of the opinion that the declarations made by Newton L. Fowler on these several occasions were admissible in evidence as dying declarations.

Plaintiff in error insists that the verdict is not supported by the evidence. Several witnesses testified that they heard a noise in the alley where Newton L. Fowler was struck and injured, and heard some one running immediately thereafter. The noise and running were heard not far from the hour of twelve o'clock. Witness Thomas Robinson testifies that he saw plaintiff in error go up the alley about twelve o'clock and shortly after return running down the alley. Newton L. Fowler, while conscious and awaiting death from the injury, made declarations to three or four different persons that he was struck with a hard substance by the defendant. The evidence was such as to clearly warrant the jury in finding the defendant guilty, and whilst, as is usually the case, there is a conflict in the evidence, it was a question for the jury, and it cannot be said that the verdict is not supported by the evidence.

It is urged that the court erred in giving the sixth instruction for the People, which was to the effect that whilst the defendant was a witness in his own behalf, yet in weighing his testimony the jury had a right to take

into consideration his interest in the result, and should apply all the tests applicable to any witness, and might "consider the interest he has in this case and the motive to swear falsely in his own behalf." The purpose of considering the interest of the defendant when he offers himself as a witness in the case is, that the jury may consider the influences which will affect his testimony. His interest is the motive which may influence his testimony, and whilst not technically accurate in its phraseology this instruction is not of a character to mislead the jury.

Objection is made to the twelfth instruction given for the People, because it states it was not material to prove where the deceased died, if it was shown he died from the effects of the assault. We have heretofore discussed this question, and deem it unnecessary to add to what we have said. This instruction was not error.

Objection is taken to the sixth and seventh clauses of the twenty-first instruction, which was as to the question of reasonable doubt. Without extending this opinion in the discussion of this question, we hold there was no error in giving the instruction.

The court gave for the defendant sixteen instructions as asked, and three were modified and given as modified. These instructions so given covered every phase of the case, yet it is urged the court erred in refusing instructions asked by the defendant. A careful examination of the refused instructions shows that those which were good are absolutely covered by other instructions given, and the one stating the place of death was neccessary to be proven was properly refused.

We find no reversible error in the record, and the judgment of the circuit court of Hardin county is affirmed.

*Judgment affirmed.*