MOSE ROBERSON, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. When an application for a change of venue based upon the ground of prejudice against the accused in the county where the trial is had is supported only by the affidavit of the accused, the refusal of the,trial court to grant it will not be reversed in the absence of any showing that the decision was not based upon the insufficiency of the proof of the facts stated in the affidavit, and it does not appear that the accused was prevented from getting corroborative evidence by hostile public sentiment.

2. An indicment alleging the infliction of a mortal wound upon the body of the deceased is sufficient without stating upon what particular part of the body the wound was inflicted.

.3. An indictment that alleges the infliction of mortal wounds in a county of this State, and that the pary wounded died of such wounds within a year and a day of their infliction, but does not state in what county and State the death occurred, is sufficient under the laws of this State. (Mabry, J., dissenting).

Writ of Error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*T. A. & B. B. MacDonell*, for Plaintiff in Error.

*The Attorney-General*, for Defendant in Error.

MABRY, J.:

Plaintiff in error was convicted of the murder of Dennis Jenkins and sued out a writ of error from the judgment of the court.

The first error assigned is the refusal of the court to change the venue of the case. The application for the change of venue is identical with that presented in the case of Frank Roberson against the State, decided at this term, except that the copy of the newspaper referred to in the petition nowhere appears in any part of the record in this case. The showing made for the change of venue was contained in the petition of the accused, supported only by his affidavit, to the effect that he feared he could not have a fair and impartial trial in Duval county on account of the inhabitants of the county being prejudiced against him, and that such fears were based upon the expressions in certain newspaper publications in the city of Jacksonville. There was no evidence to support the alleged ground for a change of venue aside from the uncorroborated affidavit of the accused, and this is not sufficient under our decisions. See Frank Roberson v. State, at this term.

A motion was made to quash the indictment on the grounds:

1st. That it was fatally defective in that it fails to show upon what part of the body of Dennis Jenkins, the deceased, the mortal wound was inflicted.

2nd. That the indictment fails to show in what State and county Jenkins died after receiving the alleged mortal wound.

The first ground is disposed of by the decision in the case of Frank Roberson against the State, decided at this term. The indictment alleges that a mortal wound of certain dimensions was inflicted upon the *body* of the deceased, Jenkins, and the only contention is that it should have alleged the particular part of the body upon which the mortal wound was inflicted. The indictment in this respect is sufficient.

The indictment does not allege the State, county or locality where the deceased died. It alleges the infliction of a mortal wound upon his body in the county of Duval and State of Florida on a given date, and that of said mortal wound the deceased languished and languishing did live until a subsequent date, eighteen days, when he died. At the common law in cases of homicide the place of the death had to be alleged in the indictment and this was in the county where the trial was had and the investigation of the crime took place. It was said this was necessary to show jurisdiction in the court in that county. It was also a principle of common law pleading that the essential ingredients of the offence, embracing with reasonable certainty the particulars of time and place, should be stated in the indictment in order to enable the accused to prepare for his defence and protect himself after judgment against a subsequent prosecution. When a mortal wound was inflicted in

one county and death ensued in another, doubts arose as to whether there could be any prosecution in either county, and to remove such doubts a statute was passed, during the reign of Edward VI, providing that prosecution might be had in the county where death took place. In the preamble to this statute the uncertainty on the subject was recited and also the reason for it. Anciently jurors were the witnesses in the case and had to come from the particular locality of the crime, and hence the necessity of alleging venue not only of the county, but of the vicinage or particular locality of the offence. When a mortal blow was struck in one county and death resulted in another, a jury of the county where the blow was struck could enquire of that fact, but it was supposed that they could not consider the matter of death which occurerd in the other county. The old authorities speak of having the dead body carried back where the blows were struck in order to avoid the difficulty and of permitting an inquest upon the body. When jurors ceased to be selected because they were witnesses of the occurrences in the case, and based their conclusions upon sworn testimony, it would seem that the difficulties in the way of trying in the county where the fatal blow was struck had disappeared. It appears, however, on account of the doubts expressed, the statute was passed, and at a subsequent period a further enactment was made providing for cases where a mortal wound was inflicted in England and death resulted beyond, and *vice versa*. The true view probably is that at common law the offence was committed where the mortal wound was inflicted and the crime was complete there so far as the defendant was concerned. Death must result within a year and a day from the wound in order to constitute murder, but when it does result within that time it re-

lates back to the fatal beginning as a direct sequence of it. United States v. Guiteau, 1 Mackey 498; State v. Gessert, 21 Minn. 369; Riley v. State, 28 Tenn. (9 Humph.) 646; State v. Kelly, 76 Me. 331, S. C. 49 Am. Rep. 620; Green v. State, 66 Ala. 40, S. C. 41 Am. Rep. 744; Stout v. State, 76 Md. 317, 25 Atl. Rep. 299; Ex parte McNeeley, 36 W. Va. 84, 14 S. E. Rep. 436, S. C. 32 Am. St. Rep. 831. Our constitution ordains that the accused shall have a right to a trial in the county where the crime was committed, and the language of our statute is that "all criminal causes shall be tried in the county where the offence was committed, except when otherwise provided by law." §2358 Rev. Stats. There are other provisions on the subject of local jurisdictions of offences, and among them are the following: Section 2360. "When the commission of an offence commenced here is consumated without the boundaries of this State, the offender shall be liable to punishment here therefor, and the jurisdiction in such case shall be in the county in which the offence was commenced." Section 2364. "In all cases where an indictable offence shall be perpetrated in this State, and the same shall commence in any one county and terminate in another, the offender shall be liable to indictment in either county." So far as showing jurisdiction in the court is concerned, it is evident, under the statutes mentioned, that an allegation of a mortal wound in a county in this State and the consequent death therefrom within a year and a day would be sufficient to give jurisdiction in the county where the mortal blow was struck. If the mortal wound is inflicted in a county in this State, jurisdiction attaches there whether the death result in another county of the State or beyond its territorial limits. The question here, however, is not one entirely of jurisdic-

tion, but one also of pleading, and a direct assault was made on the indictment by motion to quash on account of the failure to allege where the death occurred. The American decisions are in conflict on the point, an apparent majority in number sustaining an indictment without an allegation as to the place of death. State v. Bowen, 16 Kan. 475; Roach v. State, 34 Ga. 78; State v. Baldwin, 15 Wash. 15, 45 Pac. Rep. 650; State v. Jones, 38 La. Ann. 792, overruling State v. Cummings, 5 La. Ann. 330.

Our statute further provides that "the common law of England in relation to crimes, except so far as the same relates to the modes and degrees of punishment, shall be of full force in this State where there is no existing provision by statute on the subject. §2369 Revised Statutes. We have two sections on what an indictment shall contain, as follows: Section 2892. "Every indictment shall be deemed and adjudged good which charges the crime substantially in the language of the statute prohibiting the crime or prescribing the punishment, if any such there be, or if at common law, so plainly that the nature of the offence charged may be easily understood by the jury." Section 2893. "No indictment shall be quashed or judgment be arrested or new trial granted on account of any defect in the form of the indictment, or of misjoinder of offences, or for any cause whatsoever, unless the court shall be of the opinion that the indictment is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defence or expose him after conviction or acquittal to substantial danger of a new prosecution for the same offence." These statutory provisions have not been regarded as dispensing with matters of substance as required by the common law mode of

pleading. The averment of death is material to consti-
tute the crime of murder or manslaughter, and accord-
ing to the principle of pleading already stated, every
material averment in an indictment should be stated
with time and place. The time should be stated to show
that death ensued within the year and day, and place to
enable the accused to show, if he can, that it did not
occur, and also to protect himself against further prose-
cution in the county where death occurs, which is au-
thorized by statute. If the death occurred in the coun-
ty where the mortal blows were inflicted, the common
law indictment so alleged it, and if it occurred in a dif-
ferent county, that fact was also stated, and the accused
fully advised of where it was alleged to have taken place.
In reference to indictments under statutes, it is stated
by Chitty (Criminal Law, vol. 1, 195): "It may, in gen-
eral, be observed that in indictments founded upon the
statutes we have already enumerated, which authorize
a mode, or place of trial, that did not exist at common
law, all facts within the realm should be laid in the coun-
ty where they actually happened. Thus, in case of mur-
der, if the stroke or poison be given in one county, and
death occur in another, the facts should be stated ac-
cording to their actual existence." The point was di-
rectly passed on by the Supreme Court of the United
States in the case of Ball v. United States, 140 U. S. 118,
11 Sup. Ct. Rep. 761, and it was there held that an in-
dictment for murder that failed to aver the place of the
death was fatally defective. The same conclusion was
reached in State v. Coleman, 17 S. C. 473. See, also,
Kerr on Homicide, §268. The following decisions also
bear on the question: People v. Dougherty, 7 Cal. 395;
Chapman v. People, 39 Mich. 357; Riggs v. State, 26
Miss. 51; State v. Dunkley, 3 Ired. 116; State v. McCoy,

8 Robinson (La.) 545, S. C. 41 Am. Dec. 301. See, also, Conner v. State, 29 Fla. 455, text 485, 10 South. Rep. 891. I think the view adopted by the Supreme Court of the United States, being in harmony with the rule of the common law, is the correct one and should be followed. It will be seen that under section 2364 Revised Statutes, where an indictable offence shall commence in any one county and terminate in another, the offender shall be liable to indictment in either county. In case mortal blows should be inflicted in one county and death ensue in another, and the indictment should be found in the one where death occurred, should not there be allegation of the county where the blows were struck, as well as where the death occurred? Without expressing an opinion as to the right of the State under our constitution to indict as in the case supposed, it is sufficient to say that the act of the legislature in terms authorizes it, and it appears to me that the best course is to require the indictment, as was the rule of the common law, to state not only the county where the mortal blows were inflicted, but also the county or place where death ensued. The majority of the court think that an indictment alleging mortal blows in the county where the prosecution is instituted need not state any county or place where death occurred, and as there are no other questions raised in this case than as above considered, the judgment must be affirmed.

CARTER, J.:

It seems to me that at common law the county in which the death occurred was required to be alleged in an indictment for murder merely as venue or to show jurisdiction, and not as a fact essential to properly de-

scribe the crime or necessary to enable the defendant to prepare his defence upon the merits of the charge. Prior to the statute of Edward VI, if a mortal blow was given in one county from which death resulted in another, it was doubtful whether the party giving the blow was indictable or triable in either, though according to Lord HALE the more common opinion was that he might be indicted where the stroke was given, as the death was but a consequent and might be found though in another county. 1 Hale's Pleas of the Crown, 426. So it seems the dead body could be removed into the county where the stroke was given for the coroner to take an inquest *super visum corporis. Ibid.* As the mortal blow and subsequent death were each essential facts in the crime of murder, and the juries were not authorized to find essential facts happening beyond their own counties, it was supposed that in the cases mentioned there could be no indictment in either county because the juries of one could not take notice of a blow or a death happening in another. 1 Chitty Cr. Law, p. *178. The removal of the dead body to the county where the blow was given would enable the juries of that county to take notice of the fact of death, but not of the place where it occurred, and if the place of death was material as well as the fact of death, I do not see how the juries of the former county could inquire as to that fact, for it was located beyond their county. If the indictment in such cases was required to allege the place of the death, and it alleged it truly, it would be defective because upon its face it would require the jury to inquire, as to material matters outside their county. If it alleged the place of death as being within their county, when it fact it occurred beyond, there would be a fatal variance, and the party would be acquitted. If the removal of the dead

body to the county where the stroke was given gave authority to the juries of that county to find indictments against and try persons for the murder, it would seem that the fact of death was material, but that the place of death was immaterial in such cases. United States v. Guiteau, 1 Mackay, 498; Kirkham v. People, 170 Ill. 9, 48 N. E. Rep. 465. Of course after the statute of Edward VI it was necessary to allege the county in which the death occurred, for that act required the trial to be had in that county, and if we had no statutes changing the common law as modified by the statute of Edward, it would be necessary to allege the place of the death in our indictments. There are other considerations which indicate that the allegation of the exact place of death was not at common law regarded as descriptive of the offence in the sense of giving the defendant the particulars of the crime with which he was charged, to enable him to prepare his defence or to plead the judgment in bar of another indictment for the same offence, but merely as stating the venue or showing the jurisdiction of the court. If an indictment alleged that the death occurerd at a particular place in the county where the indictment was found, and the evidence showed that it occurred at another place but in the same county, the variance was not fatal. 2 Hawkins Pleas of the Crown, §92, Chap. 23; §172, Chap. 46; 2 Hale's Pleas of the Crown, 291; 1 Chitty Cr. Law, *200; Carlisle v. State, 32 Ind. 55. These considerations seem to me to make it clear that the allegation of the place of death at common law was material only in so far as the jurisdiction was concerned, and that it was never required as descriptive of the offence, for matters of the later character were required to be alleged with as much certainty as the case would admit (1 Chitty Cr. Law, *171) and a

variance in the proof and the allegation was fatal. If the place of the death is a fact material to allege in order to give the defendant the particulars of the offence, then it would not be sufficient to say that it occurred in a certain county, but it would be necessary to allege that it occurred at a certain place in a certain county, and a substantial variance between such an allegation and the proof ought to be fatal, because otherwise the defendant would actually be misled, and deceived. Believing that this allegation was at common law necessary only for the purpose of showing jurisdiction or venu, I think it is no longer necessary under our statutes to allege the place of death where the indictment, as in this case, alleges that the mortal wounds were inflicted in the county where the indictment is found, and states the particulars of the offence so plainly that the nature of the offence charged may be easily understood by the jury and with such fullness and certainty that the accused is fully advised of the nature and cause of the accusation against him, and can not be embarrassed in the preparation of his defence, nor exposed after conviction or acquittal to substantial danger of a new prosecution for the same offence. Sections 2360, 2364, 2892 and 2893 Revised Statutes. This indictment follows the approved precedents for murder by shooting, except that it omits the allegation as to the place of the death of the deceased. Being satisfied that allegation is no longer necessary, and that the other questions raised are properly disposed of in the opinion prepared by Mr. Justice MABRY, I think the judgment should be affirmed.