STATE OF IOWA v. FRANK PIERCE, Appellant.

Homicide: THREATS. Where one kills another who is preventing defendant's employees from using a dumping ground, his threats to kill anyone who should interfere with defendant's men are admissible though they did not refer to deceased by name. (3)

Verdict: Sufficiency of Evidence. Facts considered and held sufficient to sustain verdict for manslaughter. (3)

Grand Jury: Selection: Indictment. The fact that grand jurors are selected from newly created precincts in which no general election was ever held, will not sustain a challenge to the array. (1, 2)

SAME. The apportionment of such jurors to such precinct may be made on the best information obtainable by the auditor, and the fact that such is not absolutely accurate should not quash the indictment, Code, section 236, is directory. (2)

Time for Challenge. A challenge to the panel or to an individual grand juror must be made before the jurors are sworn. Code, section 4266. (1)

*Appeal from Warren District Court.*—HON. J. H. HENDERSON, Judge.

TUESDAY, MAY 8, 1894.

THE defendant was indicted in the district court of Polk county for the willful, deliberate, and premeditated murder of E. H. Wishard. The venue of the case was changed to the district court of Warren county, where a trial was had which resulted in a ver-

dict and judgment for manslaughter. The defendant appeals.—*Affirmed*.

*A. A. Haskins* for appellant.

*John Y. Stone*, Attorney General, *Thos. A. Cheshire* and *W. A. Spurrier*, for the state.

ROTHROCK, J.—I. There is no controversy as to the fact that E. H. Wishard is dead, and that he was killed by the defendant. The defendant was arrested, and a preliminary hearing was had before a magistrate, and he was held to abide the action of the grand jury at the next term of the district court. When the grand jury was called, the defendant interposed the following challenge to the panel: "Mr. Haskins: The defendant challenges the array of the panel for the reason that section 236 of the Code, provides that a county auditor shall, on the first Monday in September in each year, apportion the number of grand and trial jurors to be selected from each election precinct, as nearly as practicable according to the number of votes polled therein at the last general election, and deliver a statement thereof to the sheriff, for the reason the election precincts at the election prior to the selection of the present grand jury and trial jury were different—not less than two townships in the county entirely abolished in the meantime—and the grand jury now before the court, and now in the box, were selected from the changed precincts, wherein no election had ever been held prior to that election. That is all I care to do." The testimony of the auditor of the county was taken as to the manner in which the names of electors were selected from which to draw the grand and petit jurors for the year 1891. So far as we have been able to discover from the record in this case, no other challenge to the grand jury was interposed by the defendant, or in his behalf, except that above set out. What was done in

the way of objection or challenge to the grand jury is set out in the argument of appellant's counsel, as follows: "The first serious objection of which we complain is as to the legality of the grand jury which found the indictment. When summoned before the grand jury to show cause why they should not return an indictment against him, the defendant challenged the panel of the grand jury because of the fact that the grand jury for the year 1891, for Polk county, had been drawn from election precincts in the city of Des Moines, and in country townships which were not in existence at the annual election in 1889, when the names of the grand jurors for 1891 were returned by the judges of election. The same objection to the grand jury, and to all of the proceedings subsequent to the indictment, were again raised at every stage of the proceedings, to wit, by motion to quash the indictment, by objection to the testimony, by motion at the close of the evidence, the instructions to the trial jury to return the verdict for the defendant, and by the motion in arrest of judgment and for a new trial, all of which objections will be argued at this time." We have set out all that we can find in the record pertaining to the challenging of the grand jury, because an elaborate argument is presented by counsel upon the alleged unconstitutionality of certain acts of the legislature enlarging the corporate limits of the city of Des Moines, and providing for changing the voting precincts therein. It will be observed that there is neither an express nor implied claim in the record that the law under which the voting precincts were changed was unconstitutional, or that the changes in the precincts were not lawfully made. The challenge to the panel was because the jurors were selected from the precincts, as changed, in which no election had been held prior to the time fixed for selecting names of persons to be drawn as jurors for the year in which the indictment was found. The statute

explicitly provides that a person held to answer for an offense can not be allowed to challenge the grand jury, or any individual juror, after they are sworn. Code, section 4266. This court has repeatedly held that a defendant held to answer has an opportunity to challenge the grand jury before it is sworn, and that, if he fail to do so then, he can not afterward make objection. *State v. Ingalls*, 17 Iowa, 8; *State v. Hinkle*, 6 Iowa, 380; *State v. Howard*, 10 Iowa, 101; *State v. Hart*, 29 Iowa, 268; *State v. Gibbs*, 39 Iowa, 318. It is wholly immaterial what questions were presented to the court touching the illegality of the changes in the extent or number of the election precincts. No such question was presented by the record, and it would be manifestly improper to allow the defendant to make such objection now. The law imperatively requires that all objections to the grand jury must be made when it is impaneled and sworn. It would be absurd to hold that a person held to answer could present part of his objections, and withhold others, to be used in motions to quash the indictment and in arrest of judgment.

II. We will now consider the question presented as to the manner in which the names of the persons were selected from which to draw the grand jury. Section 234 of the Code is as follows: "Two jury lists, one consisting of seventy-five persons to serve as grand jurors, and one consisting of one hundred and fifty persons, or, in counties containing more than twenty thousand inhabitants, of two hundred and fifty persons, to serve as trial jurors, and composed of persons competent and liable to serve as jurors, shall annually be made in each county from which to select jurors for the year commencing on the first day of January." Section 236: "On or before the first Monday in September in each year the county auditor shall apportion the number to be selected from each election precinct as nearly as practicable in proportion to the number of

votes polled therein at the last general election and shall deliver a statement thereof to the sheriff." The last general election held previous to September 1, 1890, was the annual election for 1889. The boundaries were changed in 1890, and before the first day of September of that year. The auditor of the county was required to make the apportionment to the precincts as they were on the first day of September. There had been no general election in the precincts, as changed. He made the apportionment from such information and data as was attainable; and the judges of the precincts, as changed at the general election in 1890, certified to the auditor the proper number of names of persons, as shown by the apportionment. Now, it may be conceded that the apportionment was not entirely accurate. But entire accuracy is not required. It is provided that it must be "as nearly as practicable in proportion to the number of votes polled" in each precinct. The change of the boundary lines of precincts rendered an accurate apportionment impracticable, if not impossible. The auditor was required to act, but was not called upon to perform miracles; and, because the above cited provisions of the law, and others, pertaining to procuring jury lists, are not always strictly followed, this court has uniformly held that the law is directory. It was said in the case of *State v. Ansaleme*, 15 Iowa, 44, where the judges of the election failed to make a certificate to the list of persons returned: "Where there has been a substantial compliance with the law, the indictment should not be set aside. To set it aside because of some slight departure from the directory statute, which has to be administered, as a rule, by those but little conversant with legal and technical forms, would be contrary to the spirit and policy of our Criminal Code." See, also, *State v. Knight*, 19 Iowa, 94; *State v. Carney*, 20 Iowa, 82; *State v. Brandt*, 41 Iowa, 593; *State v. Becky*, 79 Iowa, 368, 44 N. W. Rep.

679. Such a construction of these provisions of the law is contemplated by section 4538, which requires this court to "examine the record, and, without regard to technical errors or defects which do not affect the substantial rights of the parties, render such judgment on the record as the law demands." It is to be understood that no question is presented in this case as to the manner in which the jury was drawn from the lists, as returned. We think the court did not err in overruling the challenge to the grand jury.

III. It is claimed that the verdict was contrary to the evidence for the reason that it appears, without conflict, that the defendant took the life of Wishard in self-defense. For some time prior to the homicide the defendant was engaged in removing the contents of privy vaults, cesspools and other offensive matter. He had men and teams in his employ, who performed the labor, and he superintended the business. The garbage or filth was for a time removed to, and deposited at, the foot of Ninth street, which had not been opened up for public use. There was an inclosure there made by one Becker. The defendant had an arrangement with Becker to enter upon the inclosure, and deposit the filth. There was a disagreement about the matter and Becker refused to allow the defendant to continue the use of the inclosure as a dumping ground. The city had established a crematory to burn up garbage and other refuse matter at a point near where Becker's fence crossed Ninth street. On the day that Wishard was killed, and for some time before that, he was employed by the city to superintend the crematory. He was regularly sworn into the service of the city as a policeman. The defendant went upon the ground, and insisted that his employees, who were there with loaded wagons, should make excavations in the street, and deposit the loads therein. Wishard objected, and a collision ensued between the defendant and Wishard, in which Wishard

received a mortal wound from a revolver in the hands of the defendant. Wishard had a revolver, which was discharged during the affray; and it is claimed for the defendant that Wishard shot first, and that the fatal shot was fired by the defendant to protect his own life. A large number of persons were present, and witnessed the tragedy; and, as is usual in such cases, the witnesses did not describe the affair, in all respects, in the same way. There was evidence which fully authorized a finding by the jury that the defendant went to the fatal spot with the intention of murdering any person who should interfere to prevent him from depositing the filth at some point near Ninth street. He made such threats on the morning of the day of the tragedy. It is true he did not specially name Wishard as one of his probable victims. He included any and all who should oppose him. He armed himself with two revolvers strapped to his person. It is claimed that evidence of these threats was inadmissible, because they were not specially made, as against Wishard. They were competent evidence, because they included Wishard. It is said that certain evidence as to the statements and declarations of the defendant and Wishard were inadmissible, because they were made after the fatal shot was fired. The objection is without merit. They were part of the transaction, and it would have been error to exclude them. Without detailing the facts testified to by the witnesses, and upon a full consideration of all the evidence—for much of which we have been compelled to resort to the reporter's transcript—we do not hesitate to say that the verdict is not only fully warranted by the evidence, but that, if the jury had found the defendant guilty of murder, an appellate court would not be justified in setting it aside.

Other questions discussed do not require special mention. The case was fairly tried, and the judgment is AFFIRMED.