## State-of Iowa v. Augusta Fertig, Appellant.

**Criminal Law:** HUSBAND AND WIFE: *Coercion.* On the trial of one jointly indicted with her husband for the unlawful selling of intoxicating liquors, where the evidence shows that she acted under the express orders of the husband, who had complete control over her, it is proper to charge that, in order to raise the presumption of coercion, it is sufficient if the husband was about the premises, even though in another room, if the wife was so immediately near him as to be fairly held under his control.

**EVIDENCE.** Evidence of declarations of a husband that his wife was running a saloon in her own name, and that he had nothing to do with it, which is objected to as incompetent, is inadmissible as hearsay, on the prosecution of the wife for maintaining a nuisance by the sale of intoxicating liquors.

*Same.* Evidence of the conviction of one jointly indicted with defendant on a criminal prosecution has no tendency to prove that defendant is innocent, and is inadmissible.

**PRACTICE:** *Indictment.* That a person not a member of the grand jury was present before it and advised with it concerning an indictment is not ground for setting aside the indictment, under Iowa Code, section 4337, unless it also be shown that he was not "required or permitted by law" to be present.

*Appeal from Floyd District Court.*—Hon. P. W. Burr, Judge.

### Wednesday, May 13, 1896.

The defendant was indicted, tried, and convicted upon a charge of keeping and maintaining a nuisance by the sale of intoxicating liquors, and she appeals.— *Reversed.*

*S. W. Woodhouse* for appellant.

*Frank Lingenfelder*, county attorney, and *Milton Remley*, attorney general, for the state.

ROTHROCK, C. J.—I.  The defendant filed a motion to set aside the indictment upon the ground that H. J. Fitzgerald, who was not a member of the grand jury, was present before the grand jury during the investigation of the case against the defendant, and that said Fitzgerald took part in the proceeding, by examining witnesses.  The motion was denied, and complaint is made of the ruling.  By section 4337, of the Code, one of the grounds for setting aside an indictment is, "When any person other than the grand jurors was present before the grand jury, when the question was taken upon the finding of the indictment, or when any person other than the grand jurors, was present before the grand jury during the investigation of the charge, except as required or permitted by law."  It appears from the showing made in support of the motion, that Fitzgerald was present before the grand jury, and examined a witness in part, and advised with the grand jurors in regard to the charge against the defendant.  But it does not appear that he was present when the vote was taken on the finding of the indictment, and no showing was made as to the authority under which Fitzgerald acted in the investigation.  It was incumbent on the defendant to show that he was present unlawfully, or that, in language of the statute, he was not "required or permitted by law" to be present.  It is provided by section 270, of McClain's Code, that "the county attorney may appoint deputies  *  *  *  to assist him in the discharge of his duties."  One of the duties to be performed is to attend the grand jury for the purpose

of examining witnesses in their presence, or giving them advice in any legal matter. McClain's Code, section 274. It is very plain that it was not unlawful for Fitzgerald to perform the service complained of, if he was a deputy of the county attorney. And, as there was no showing that he was not so authorized, there was no error in overruling the motion. Fitzgerald was a witness on the trial, and testified that he was assisting the county attorney at the time the indictment was found.

II. The defendant was indicted jointly with her husband, George Fertig. It appears that they kept a room in their dwelling house where intoxicating liquors and other things, such as cigars and tobacco, were kept for sale. The place appears to have been called a restaurant. There was but one witness examined on the trial who testified to sales of liquors. He was first examined as a witness for the state, and later he was a witness for the defendant. It appears from his testimony that he frequently bought intoxicating liquors in the saloon or restaurant, and that he was always waited upon by the defendant, and that liquors were not at any time directly sold to him by the defendant's husband. The court instructed the jury upon the liability of the wife as follows: "(7) The law presumes that the influence of a husband over his wife is such that she is not held criminally liable for the unlawful acts done by her in his presence, unless there is evidence to rebut this presumption, and satisfy the jury that the wife, in what she did, if anything, was exercising a free volition, and was guilty of independent criminal action on her own part; and she cannot be found guilty unless you find that she was exercising, in what she did, if anything is shown, a free will to do or not to do, and an independent criminal action on her own part when in his presence. (8) It is not necessary that the

husband should be in the actual, physical presence of the wife, before there can be a presumption that the wife is coerced. If the husband was about the premises, even though in another room, or in another part of the premises, the presumption will still prevail, if she was so immediately near him as fairly to be held under his control or in his presence." No complaint is made of these instructions. They were applicable to the evidence in the case. There is much in the testimony of the single witness who was examined in the case to require just such a charge to the jury, While it is true the witness testified that the defendant served him with the liquors he bought, yet there is much in his testimony which tends to show that it was done under the express orders of the husband, who had complete control over her, as appears from the following testimony of the witness: "Q. Do I understand you, now, that, when you went in there after drinks, you usually saw George somewhere around the building? A. I usually saw or heard him around the building different times during the day. There was a great many times I went in there I did not go for drinks. I saw him part of the times—not always—in the store-room, when I went in there after drinks. At other times I didn't see him, but heard him. I heard him around the building. Always heard him before I saw him. Augusta was not always in the front part of the building when I went in there for drinks. Q. On those occasions how did you get the drinks? A. Lots of times I didn't get any. Q. Other times you did get them. Did George call her out to get them? A. Usually, yes sir, he did. He didn't call her by name, but he did. Q. What did he say to her? A. He had signals I did not understand. Q. Then, as a rule, when you went in there, and Augusta was not in, George would call her out to wait on you, did he? A. I don't know

as he really called her out into the front room to wait on me, but he made some sign that she came to. I could not say that he called her by name, but he indicated, I suppose, that she was wanted in there some other way. Q. Can't you tell how he indicated it? A. Sometimes rap, stamp his foot on the floor. Q. Don't you recollect of his calling her by name in any way? A. I heard him call her 'Mother.' Didn't call her out there. She usually came, though. When I went in there and she was not there, he would sometimes holler the word 'Mother.' She usually came. Then she would wait on me to say what I wanted,— cigars or drinks. The whisky, or stuff I drank I sometimes paid five cents for, sometimes ten cents. I drank it out of a glass. Sometimes an ordinary tumbler. I did not drink a tumblerful; it wouldn't be full. I couldn't say how much it varied at different times. Sometimes when I paid ten cents I drank it out of the same kind of a glass. I guess the stuff I paid five cents for was as near whisky as the ten cent drink was. He said his wife was running the restaurant there, that he had nothing to do with it." The witness also stated that the defendant acted at all times when he got liquors as though she was afraid of her husband; that he swore at her; that he generally talked in German when he was swearing, but that the swearing came in English, "and the balance was German, kind of mixed up." It will be seen from the above statement of facts sworn to by the witness, that the important question in the case was whether the wife was so under the control of the husband as not to be criminally liable for waiting on the customers. After the cross-examination of the witness, a part of which is above set out, the plaintiff re-examined him as follows: Direct resumed: "I do not know in whose name this business was carried on. Q. You had a conversation with George, in which you tried

to get liquor of him. What did he tell you in reference to having anything to do with the business himself, in that conversation? (Defendant objects on the ground that it is improper in this case. Overruled. Defendant excepts.) A.. He told me he had nothing to do with the business. Q. Who did he tell you was running the business, if anything, in that conversation? (Defendant objects on the ground that it is improper and incompetent, and a cross-examination of their own witness. Overruled. Defendant excepts.) A.. He said his wife was running the restaurant; that he had nothing to do with it." Defendant objected to this testimony, and the objection was overruled. The ruling of the court upon admitting this evidence is the principal question in the case. We can discover no ground upon which it can be sustained. It appears to us to be the merest hearsay. It is no part of a transaction or conversation called out by the defendant in cross-examination. The witness had made no reference to any conversation with the husband as to who was proprietor of the establishment. Indeed, there is no evidence in the case tending to show that the wife was carrying on an independent business, nor that she owned the stock in trade, or the building. About all that does appear is that she came when he stamped his foot and called for her, and tremblingly waited on customers.

III. The defendant offered in evidence the record of the trial of George Fertig upon this indictment at a prior term of the district court, from which it appears that he was convicted, and sentenced to pay a fine of five hundred dollars and costs, and to stand committed to jail for one hundred and seventy-five days, in default of payment of the judgment.

The court, on the objection of the prosecution, refused to permit this evidence to be introduced, and this ruling of the court is the subject of complaint.

The ruling was right. It is only necessary to say, in sustaining the action of the court in this respect, that where two persons are jointly indicted for the same offense, the fact that one of them has been convicted, is no evidence tending to show that the one on trial is not guilty. For the error in admitting evidence of the declarations of George Fertig, that his wife was proprietor of the nuisance, the judgment of the district court is REVERSED.