JOHN FOOSHEE v. STATE.

No. A-181.   Opinion Filed April 26, 1910.

(108 Pac. 554.)

1.   APPEAL AND ERROR—Assignment of Error—Sufficiency. An assignment of error in substance that the court erred in over-ruling a motion for a new trial, states a conclusion which could result only from error committed prior to the presentation of the motion; and the assignment of itself presents no question for review in the appellate court.

2.   INDICTMENT—Construction of Recitals—"Then and There." The formal part of an indictment reads as follows: "At the November, 1908, term of the District Court of Carter County, State of Oklahoma, begun and held in the City of Ardmore in said county, on the 9th day of November, 1908, the grand jury of said county, good and lawful men, legally drawn and summoned according to law, and then and there examined, empaneled, sworn and charged according to law, do present and find, etc." Held, that the words "then and there" have direct reference to the expression, "at the November, 1908, term of the district court," and not to the phrase, "on the 9th day of November, 1908."

3.   INDICTMENT—Recitals—Date of Impaneling Grand Jury. The date of the empaneling of a grand jury is properly shown by the journal of the court, and need not appear in the indictment. If the indictment shows that it was found and returned at a term of the district court by a grand jury empaneled during that term, it is sufficient in that respect.

4.   GRAND JURY—Qualifications of Jurors. The mere fact that a person is a member of an association organized for the purpose of aiding the public officers in the maintenance of law and order and the suppression of crime, does not disqualify such person as a grand juror.

5.   SAME—Time for Questioning Qualifications. Under Section 6738 of Snyder's Comp. Laws of Okla., after a grand juror has been

examined as to his qualifications, has answered under oath that he is qualified, has been received by the court and permitted to act, and after an indictment has been found, no possible issue can be made upon the competency or incompetency of such juror for the purpose of invalidating the indictment.

6. **SAME.** Under section 6663 of Snyder's Comp. Laws of Okla., a person held to answer a charge for a public offense may, before the grand jury is sworn, challenge for cause an individual grand juror or the entire panel; failing to do so, he cannot, after an indictment has been found, take advantage of any objection to the panel or to an individual juror, whether he knew of such objection at the time the jury was empaneled or not.

7. **JURY—Competency of Jurors—Service on Recent Panel.** The statutory inhibition against placing an elector's name in the jury box who has served upon a regular jury panel within twelve months last past, is not mandatory, but only directory; and a violation thereof as to any person will not vitiate the jury list, but will render such person subject to challenge for cause when called upon to serve the second time. If, however, he be not challenged on that ground, the question of his competency cannot afterwards be raised.

8. **GRAND JURY—Authority of Deputy County Attorney.** Under section 1603 of Snyder's Comp. Laws of Oklahoma, a lawfully appointed deputy county attorney may appear before the grand jury for the purpose of interrogating witnesses, and may perform the same duties before the grand jury which the county attorney himself may perform.

9. **INDICTMENT—Setting Aside—Misconduct of Grand Jury.** Proof that the grand jury left their regular jury room and went to a nearby sanitarium to take the testimony of a witness, without any showing as to who the witness was, whether or not his testimony was in fact taken, why he could not attend before the grand jury, or to what case the testimony of the witness pertained, the act of the grand jury standing in the record as an isolated fact unconnected with the case at bar by any evidence direct or circumstantial, constitutes no ground for setting aside an indictment.

10. **INDICTMENT—Murder—Equivalent of Statutory Language.** An indictment for murder, to be sufficient, must allege that the killing was done without authority of law, but it need not allege it in the exact language of the statute; the use of any other words equivalent in effect and meaning is sufficient.

11. **SAME—"Unlawfully."** The word "unlawfully" is the full equivalent in effect and meaning of the phrase "without authority of law," as the latter is used in the statutory definition of murder.

12. HOMICIDE—Murder—Indictment—Sufficiency. It is not necessary to allege in an indictment for murder that the deceased was a human being.

13. SAME—Design to Kill Another Than Deceased. In an indictment for the murder of one person committed with a premeditated design to effect the death of a different person, it is not necessary to allege an actual assault upon the person designed to be killed, under a statute defining murder as the killing of one human being by another, without authority of law, and with a premeditated design to effect the death of the person killed or of any other human being.

14. INSTRUCTIONS—Intimation by Judge of Opinion of Guilt. In an instruction to the jury that, "If you convict the defendant, you can only convict him on one count of the indictment," the conditional clause, "if you convict the defendant," does not indicate any belief, opinion or desire in the mind of the court as to what the verdict of the jury should be.

15. TRIAL—Verdict—Specifying Count of Indictment. Where a conviction is had upon an indictment containing more than one count, but each count charging the same offense in a different form, the law does not require that the jury state in their verdict upon which count the conviction is had.

16. SAME. Where the same act constitutes two or more different offenses, and such different offenses are charged in separate counts of the same indictment, the law requires that a verdict of conviction state upon which count the conviction is had.

17. HOMICIDE—Murder—Instructions—"Premeditated Design." The court instructed the jury that, "A design to effect death is premeditated within the meaning of the law, if the intention to take life is deliberately formed in the mind before the act is done which results in death. no matter for how short a time, It may be formed instantly before committing the act by which it is carried into execution." Held, a sufficient definition of a premeditated design to effect death.

18. INSTRUCTIONS—Defining Legal Terms Used—Necessity. The failure of the court to define a legal term used in his instructions and in the statutory definition of the offense, where the defendant makes no request for a definition of the term and saves no exception to the failure of the court to define it, is no ground for reversal .

19. INSTRUCTIONS—On Weight of Evidence. The court instructed the jury that, "It is the opinion of the court that there is no proof in the case justifying a conviction of the defendant of manslaughter in the second degree, that your verdict should be either guilty of murder, manslaughter in the first degree, or

not guilty; but notwithstanding this opinion of the court, you may, if on your oaths you believe the defendant guilty of manslaughter in the second degree, convict him of that crime." **Held** erroneous as being a charge on the weight of the evidence.

20.    **INSTRUCTIONS—Degree of Offense Not in Evidence.** The court should not instruct upon a degree of an offense of which there is no evidence tending to show the defendant's guilt.

(Syllabus by the Court.)

*Appeal from District Court, Carter County; Malcolm E. Rosser, Trial Judge.*

John Fooshee was convicted of the crime of murder and his punishment assessed at imprisonment in the state penitentiary at hard labor for and during the term of his life. From an order overruling a motion for a new trial, he appeals. Affirmed.

*Fooshee & Brunson,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Chas. L. Moore,* Asst. Atty. Gen., for the State.

RICHARDSON, JUDGE. The plaintiff in error, hereinafter called the defendant, as ground for a reversal of this cause urges seven assignments of error, which we shall consider *seriatim.*

The first is that the lower court erred in overruling the defendant's motion for a new trial. This assignment is general in form; it is predicated solely on other specific assignments of error, and states a conclusion which could result only from error committed in the trial of the cause and prior to the presentation of the motion for a new trial. Of itself, therefore, this assignment presents no question for review in this court.

Before entering his plea below the defendant filed a motion to set aside the indictment, alleging five grounds therefor. The court, after hearing the testimony adduced in support of said motion, overruled the same and the defendant excepted. The first reason stated in the motion as a ground for setting aside the indictment, together with the court's action in overruling the same, is made the basis of defendant's second assignment of error. This assignment is in substance that the court erred in

overruling defendant's motion to set aside the indictment, because said indictment shows on its face that it was returned by a grand jury empaneled and sworn on the 9th day of November, 1908, and the crime is alleged in said indictment to have been committed on December 1, 1908, and after the date as shown by the record on which said grand jury was discharged.

If the facts stated in this assignment were true, then undoubtedly the motion to set aside should have been sustained on this ground, and the action of the trial court in overruling the same would constitute reversible error; for the reason that such a state of facts would necessarily show, either that the indictment was found and returned prior to the commission of the offense charged therein, contrary to subdiv. 5, sec. 6704, Snyder's Comp. Laws of Oklahoma, or else that it was found and returned by a purported grand jury after said grand jury had been discharged by the court and had in fact ceased to exist as a grand jury. The journal entries show, however, that the District Court of Carter County convened on November 9, 1908, on which day a grand jury was empaneled and sworn, and one L. J. Ackers appointed its foreman. Said grand jury made its final report and was discharged on November 19, 1908. On December 4, 1908, the court being still in session, upon the petition of about two hundred citizens of Carter County, the honorable S. H. Russell, judge of that judicial district, made and entered an order for the drawing and summoning of twenty persons from which to empanel another grand jury, and ordered the venire made returnable on December 7, 1908. On December 7, 1908, such other grand jury was lawfully empaneled, and W. F. Whittington appointed its foreman. On December 14, 1908, this last grand jury, not having been discharged but being still in session, returned into open court the indictment in question against the defendant, duly endorsed and signed, and the same was filed in open court and in the presence of the grand jury. That part of the indictment material to this question reads as follows:

"At the November, 1908, term of the District Court of Car-

ter County, State of Oklahoma, begun and held in the city of Ardmore in said county, *on the 9th day of November, 1908,* the grand jury of said county, good and lawful men, legally drawn and summoned according to law, *and then and there examined, empaneled, sworn* and charged according to law, to diligently inquire into, etc. * * * do present and find, etc. * * *"

The gist of the defendant's contention on this point is that the words "then and there" as used in said indictment, refer specifically to the preceding expression, "on the 9th day of November, 1908," thus identifying the grand jury which returned this indictment as the grand jury which was empaneled on that day and consequently as the grand jury which was discharged on November 19, 1908, prior to the commission of the offense charged. This contention is extremely technical, and we cannot assent to its correctness. In the first place, the expression "then and there" as used in the indictment refers to the *term* of the court during which the jury was examined, empaneled and sworn, as said term is designated and described in the indictment, that is, "at the November, 1908, term," and does not refer to the particular date of November 9, 1908. In the second place, there is no statutory or other legal requirement that an indictment show the date of the empaneling of the grand jury which found it. Section 6704, Snyder's Comp. Laws of Okla. That is properly shown by, and is preserved in, the journal of the court. And even if the expression *then and there* as used in this indictment should be held to refer to the date of November 9, 1908, and thus create a presumption that the grand jury which returned the indictment was empaneled on that date, that presumption is nevertheless completely overcome by the journal entries which show the dates of the empaneling and discharging of the two juries. The indictment does show unequivocally that it was found and returned at the November, 1908, term of the District Court of Carter County, Oklahoma, by a grand jury lawfully empaneled during that term, and nothing more is required by the law in that respect.

Moreover, if the journal of the court is not to be considered, as the defendant contends, but only the indictment is to

be looked to in this matter and is to control, and if the expression *then and there,* as used in the indictment, refers to the date of November 9, 1908, then there is nothing to show that the grand jury empaneled on that date had ever been discharged, and nothing to show that this indictment was not returned and lawfully returned by that grand jury; for in such case the indictment so states, and the defendant says that it is conclusive. And if one journal entry may be examined to impeach the indictment in this respect, why may not another be looked to to sustain it? Are we to examine the journal to confute the indictment, but required to close the book as soon as it appears that we shall find proper entries in chronological order explaining the whole matter and showing a legal and consistent procedure throughout? Must we, in connection with this indictment, look to the order empaneling and discharging the first grand jury and close our eyes to the one empaneling this jury? We think not.

The third assignment of error is based upon the action of the court in overruling the motion to set aside the indictment, the defendant claiming that such action was erroneous for the reason that the grand jury which returned the indictment was not drawn and empaneled according to law, in that W. F. Whittington, the foreman, had previously been drawn and empaneled as a member of the petit jury at the same term of that court. This fact was set out in the motion. The assignment of error contains the further statement that Whittington was prejudiced against the defendant, and that his selection on said grand jury was therefore prejudicial; but the motion to set aside contains no such averment, nor is the statement supported by the testimony taken on the hearing of the motion. The only evidence relied upon to show prejudice against the defendant on the part of Whittington is the fact that he was a member of an association in Ardmore called a Law and Order League, which had for its purpose the aiding of the public officers in the maintenance of law and order and the suppression of crime, and that Whit-

tington had contributed one dollar toward bearing the incidental expenses of that organization.

We find nothing in the foregoing which shows that Whittington was prejudiced against the defendant; nor did the fact that he was a member of a law and order league disqualify him for grand jury service. *Koch v. State,* 32 Ohio St. 353; *Com. v. Brown,* 147 Mass. 585, 18 N. E. 587; 9 Am. St. Rep. 736, 1 L. R. A. 620; *Peoples v. State* (Fla.) 35 So. 223. But even, if he was prejudiced and was disqualified, that fact could not avail the defendant after the indictment had been returned. *Lee v. State,* 69 Ga. 705; *Williams v. State,* 69 Ga. 11; *State v. Baughman,* 111 Iowa, 71, 82 N. W. 452; *Com. v. Woodward,* 157 Mass. 516, 32 N. E. 939, 34 Am. St. Rep. 302; *U. S. v. Belvin,* 46 Fed. 381; *State v. Rickey,* 10 N. J. L. 83; *Com. v. Clark,* 2 Browne, 323; *People v. Jewett,* 3 Wend. 314; *State v. Gillick,* 7 Iowa, 287.

The record before us shows that Whittington had been previously drawn and empaneled as a petit juror at that same term of the court. It also shows that he was excused as a petit juror, but does not show how long he served, if he served at all, before he was excused. There is nothing in the record which shows how his name came to be drawn from the jury box twice. Whittington testified that he had a son with the same initials as himself, but that his son was not there at that time. It may be that his son was a resident of Carter county when the jury list was made up, and that one name was intended for Whittington and the other for his son. Be that as it may, our statute settles all objections to the competency of Whittington as a grand juror so far as it affects this indictment. Section 6738, Snyder's Comp. Laws of Oklahoma, provides:

"When a grand juror has been fully examined as to his qualifications to sit, and has answered under oath that he is qualified, and has been received by the court and permitted to act, his incompetency shall not thereafter be shown as a ground of objection to any indictment returned by that grand jury."

The journal entry of the order empaneling this grand jury

3 Cr.—43

shows that Whittington together with all of the other grand jurors was duly sworn to answer truthfully all questions touching his competency and qualifications to serve as a grand juror; that he was fully examined by the court as to his qualifications to sit; that the court found him competent and qualified, received him as a grand juror, and permitted him to act as such. That being true, after an indictment had been found against the defendant, no possible issue could be made upon Whittington's competency or incompetency which would invalidate that indictment. *People v. Phelan,* 123 Cal. 551, 56 Pac. 424; *People v. Geiger,* 49 Cal. 643; *People v. Arnold,* 15 Cal. 478; *State v. Hamlin,* 47 Conn. 95, 36 Am. Rep. 45; *Bellair v. State* (Ind.) 6 Blackf. 104; *State v. Ingalls,* 17 Iowa, 8.

It is true that the law contemplates that a juror's name shall be placed on the same list only one time, and that only one slip of paper bearing his name shall be placed in the jury box. It is also true that section 3993 of Snyder's Comp. Laws Okla. provides that, "No elector's name shall be placed in the box by the jury commissioners who has served upon a regular panel within the twelve months last past." But there is nothing in the record to show that Whittington had served on a regular jury panel within the twelve months preceding the placing of his name in the jury box, nor that he had served the limit of two weeks during this particular term of court. Moreover we regard these matters as being not mandatory but merely directory. A violation of them, unless done with a corrupt or fraudulent intent to injure the defendant, would not vitiate the whole list of jurors selected or the whole panel drawn; though individual jurors so selected and drawn would be subject to challenge for cause, if seasonably made, when drawn the second time after having already served within the statutory period.

Furthermore the record shows the presence of the defendant in open court during the empaneling of the grand jury, and the tender of the jury to him by the court for examination and challenge; a privilege of which the defendant did not avail himself, though another prisoner, John Mulkey, on that occasion

did challenge a juror named Warren. Section 6663, Snyder's Comp. Laws of Okla. provides as follows:

"Neither the state, nor a person held to answer a charge for a public offense, can take advantage of any objection to the panel or to an individual grand juror unless it be by challenge, and before the grand jury is sworn, except that after the grand jury is sworn, and before the indictment is found, the court may, in its discretion, upon a good cause shown, receive and allow a challenge."

If the defendant should succeed in having this indictment set aside on account of an objection to the juror Whittington, then he would be taking advantage of an objection to this individual juror, not only after the grand jury was sworn, but also after the indictment had been returned, a thing absolutely prohibited by the statute. This he cannot do. *State v. Pierce,* 90 Iowa, 506, 58 N. W. 891; *State v. Gibbs,* 39 Iowa, 318; *State v. Hart,* 29 Iowa, 268; *Dixon v. State,* 74 Miss. 271; *State v. Welch,* 33 Mo. 33; *State v. Hoffman,* 71 N. J. L. 285, 58 Atl. 1012; *Carter v. State* (Tex.) 46 S. W. 236, 48 S. W. 504; *Barber v. State* (Tex.) 46 S. W. 233.

Also the motion to set aside the indictment does not state that Whittington's alleged incompetency was unknown to the defendant at the time the jury was empaneled, nor was any evidence adduced on the hearing to that effect. As the fact that such incompetency was or was not known to the defendant was a fact peculiarly within the defendant's own knowledge, then even in the absence of the above statute, it was incumbent on the defendant, since he was present at the empaneling of the jury, to aver and prove such want of knowledge on his part. In the absence of such averment and such proof, even if we had no such statute as the sections quoted above, the indictment would not be set aside. *Musick v. People,* 40 Ill. 268; *State v. Howard,* 10 Iowa, 101; *Patrick v. State,* 16 Neb. 330, 20 N. W. 121. In such case, the presumption being in favor of the legality and regularity of the proceeding, the defendant would be presumed to have known the facts; and the law would deny him the right to sit silently by and fail and refuse to make his objection

known until after the indictment was returned, and then attack it with a motion to quash. But under the two sections of the statutes already quoted the defendant's knowledge or want of knowledge is wholly immaterial, and in so far as we have been able to ascertain, has been so held by every court which has been called upon to construe a statute of similar import. The court committed no error therefore in overruling the motion to set aside the indictment on this ground.

In his fourth assignment of error the defendant complains that the court erred in refusing to set aside the indictment, because one J. T. Coleman, who was not a member of the grand jury and who, as the defendant says, was not the county attorney of Carter County, was present in the grand jury room while the grand jury were investigating the charge against the defendant.

From the evidence introduced it appears that Coleman was present during the taking of testimony by the grand jury in this case; that he was not present while the jury were deliberating or voting upon the matter of finding an indictment; that he was at that time deputy county attorney of that county, and that his appointment was a matter of record in the county clerk's office in that county.

The defendant does not attack the legality of Coleman's appointment; but contends first, that under the statute no officer except the county attorney himself may be present at the taking of testimony before the grand jury, and that the deputy county attorney is excluded; and second, that Coleman was a member of the Law and Order League, prejudiced against the defendant, and intent upon his prosecution.

Section 6683, Snyder's Comp. Laws of Okla., provides:

"The grand jury may at all reasonable times ask the advice of the court or of the district (county) attorney. The district (county) attorney may at all times appear before the grand jury for the purpose of giving information or advice relative to any matter cognizable before them and may interrogate witnesses before them whenever he thinks it necessary, but no other person is permitted to be present during their sessions except the

members and a witness actually under examination, and no person whomsoever must be permitted to be present during the expression of their opinions or the giving of their votes upon any matter before them."

Section 1602 of Snyder's Comp. Laws, however, makes it the specific duty of the county attorney to attend upon the grand jury for the purpose of examining witnesses in their presence; and the following section, 1603, provides in express terms that the county attorney may appoint a deputy or deputies to perform the duties devolving on such county attorney. Construing section 6683 in connection with sections 1602 and 1603, we hold that the words "district (county) attorney" include the lawfully appointed deputy or deputies of the county attorney, and that such deputy or deputies may perform the same duties before the grand jury that the county attorney himself may perform. *Regent v. People*, 96 Ill. App. 189; *Shattuck v. State*, 11 Ind. 473; *State v. Fertig*, 98 Iowa, 139, 67 N. W. 87; *Franklin v. Com.*, 105 Ky. 237, 48 S. W. 986.

Furthermore our statute makes provision for setting aside an indictment on account of the presence of an unauthorized person before the grand jury only when such person was present when the jury were voting upon the question of returning an indictment. Section 6738, Snyder's Comp. Laws Okla. And while we are not called upon to decide the point, and do not decide it, yet there are numerous respectable authorities holding that the presence of a stranger or unauthorized person in the grand jury room only while testimony is being taken, and not while the jury are voting or deliberating, will not invalidate the indictment, unless it is shown that the accused was thereby prejudiced in some substantial right. *Bennett v. State*, 62 Ark. 516, 36 S. W. 947; *State v. Bates*, 148 Ind. 610, 48 N. E. 2; *State v. Bacon*, 77 Miss. 366, 27 So. 563; *State v. Justus*, 11 Oreg. 178, 8 Pac. 337; *Mason v. State* (Tex.) 81 S. W. 718; *State v. Brewster*, 70 Vt. 341, 40 Atl. 1037, 42 L. R. A. 444; *State v. Wood*, 112 Iowa, 484, 84 N. W. 503; *Wilson v. State*, 41 Tex. Cr. 115, 51 S. W. 916.

As to the second objection to Coleman's presence in the grand jury room, we have already held that membership in a law and order league did not disqualify the grand juror Whittington, and it would be peculiar if such membership disqualified a public prosecutor. We find no evidence of any personal animosity on the part of Coleman against the defendant; and if he was intent upon prosecuting the defendant, as contended, then his intentions were only in harmony with his duty. No misconduct on the part of Coleman is alleged or shown, nor did the defendant aver or prove that his rights were prejudiced in the least by any act of Coleman's. We sustain the lower court upon this assignment of error.

The fifth assignment of error is that the court erred in overruling the defendant's motion to set aside the indictment because the grand jury was permitted to leave the jury room and go to a sanitarium, some three or four blocks away, to examine a witness.

The case-made shows that the grand jury, under the instructions of the court, went to a sanitarium to take the testimony of one witness. The record does not show who the witness was, whether or not his testimony was in fact taken, why he could not attend before the grand jury, or to what case the testimony of the witness pertained. That act of the grand jury stands in the record as an isolated fact, unconnected with this case by even a modicum of evidence either direct or circumstantial. There are no doubt occasions on which the grand jury, *ex necessitate,* may by permission and under proper instructions of the court, leave their jury room and go to some nearby place at the county seat for the purpose of taking the testimony of a witness whose condition is such as to preclude his appearance in the jury room. The location of the grand jury room is not fixed by law. That question calls for no consideration here, however, for the reason that such act of the grand jury is not shown to have had any connection with the investigation of the charge against this defendant, and the defendant is not shown to have been injured thereby.

The next contention is that the court erred in overruling the defendant's demurrer to the indictment. It is urged that the indictment is insufficient first, because it does not allege that the killing was done without authority of law, though it alleges that it was done unlawfully; second, because it does not allege that Luther Ford, the deceased, was a human being; and third, because the killing of the deceased is alleged to have been done in an attempt by the defendant to kill one William Ballew, and the indictment does not allege that the defendant made an assault upon William Ballew.

Murder is defined by our statutes to be the killing of one human being by another, without authority of law, and with a premeditated design to effect the death of the person killed or of any other human being. An indictment for murder therefore, to be sufficient, must contain an allegation that the killing was done without authority of law. But the pleader in framing the indictment is not required to use the exact language used by the statute in defining the offense; while it is better and safer to do so, yet the use of any other language equivalent in effect and meaning is sufficient. *Walcher v. Territory*, 18 Okla. 528. We hold that the word *unlawfully* as used in this indictment is the full equivalent in effect and meaning of the phrase, *without authority of law*. If an act is done unlawfully, it cannot be said to have the authority and sanction of the law; on the contrary it is done not only without authority, but in direct violation, of law and is an unlawful act. What the law does not prohibit, however, is permitted, and is therefore not unlawful. So an unlawful act can be only a prohibited act, an act forbidden by law, an act done without authority of law.

As to the second proposition, if it was necessary to allege in the indictment that the deceased was a human being, then the indictment is defective indeed; for in such case and by the same reasoning it was also necessary to allege that the defendant and Ballew were human beings, because murder could have been committed in this case only by one human being killing another hu-

man being being in an unlawful attempt to kill a third human being. Inasmuch as the word murder, however, implies fundamentally the killing of one human being by another, and as the indictment alleges that the defendant did "kill and murder one Luther Ford," the law presumes all parties mentioned to have been human beings, and there was no necessity for alleging it in the indictment. *People v. McNulty,* 93 Cal. 427, 26 Pac. 597, 29 Pac. 61; *Cremar v. People,* 30 Col. 363, 70 Pac. 415; *Baker v. State,* 121 Ga. 592, 49 S. E. 782; *Sutherland v. State,* 121 Ga. 591, 49 S. E. 781; *Kirkham v. People,* 170 Ill. 9, 48 N. E. 465; *Merrick v. State,* 63 Ind. 327; *State v. Stanley,* 33 Iowa 526.

Nor do we find any merit in defendant's third contention upon the insufficiency of the indictment; namely, that it was necessary to charge an assault by the defendant upon Ballow. By the express terms of our statute the unlawful killing of a human being committed with a premeditated design to effect his death, or with a premeditated design to effect the death of any other person, is murder. Certainly this definition will cover a case where one person unlawfully assaults another with a premeditated design to kill him, and in the affray kills a third person. But it is not limited in its application to that character of case alone. Suppose that A in the night time lies in wait for the purpose of killing B as the latter passes by; C comes along, and A mistaking him in the darkness for B, shoots C and kills him, but with the premeditated design to kill B. Would not that be murder? And yet no assault was committed upon B; he may have been miles away. It is true that in such case an indictment charging the homicide to have been committed with a premeditated design to kill C would be good, and under the doctrine of implied malice would be sustained by proof of the actual facts. But if the prosecution knew the facts and alleged them, A's actual and premeditated design to kill B, and his assault upon and slaying of C with such premeditated design to kill B, would any one say that such indictment was not good, and that proof of the facts thus alleged would not

support a conviction? Of course there can be no murder with-out an assault. But the firing of the fatal shot, the striking of the fatal blow, the administering of the poison, all constitute not only an assault but also a battery. Necessarily therefore an assault upon the deceased is charged in the very allegation of the infliction of the fatal wound. And an indictment which charges the shooting and killing of the deceased, and alleges that the same was done without authority of law and. with a premeditated design to kill another person, naming him, fulfills the requirements of the statute; and if those allegations are sustained by the proof, a conviction there-under must stand. The indictment in this case charges the offense substantially in the language of the statute, and is sufficient.

The court gave the jury the following instruction.

"You are instructed that if you convict the defendant, you can only convict him on one count of the indictment, and it will be your duty to say by your verdict on which count you convict." .

The defendant in his seventh assignement of error complains of this instruction, and says that the expression, "if you convict the defendant," carries the inference that the court desired a con-viction. But we are unable to perceive how such an inference could possibly be extorted from those words. There is no such require-ment of law, however, as that stated in this instruction; for where a conviction is had upon an indictment containing more than one count, but each count charging the same offense in a different form, as does this indictment, the law does not require that the jury state in their verdict upon which count the conviction is had. In such case a general verdict of guilty or not guilty and, if guilty, stating the degree of the crime where it is distinguished into de-grees, is all that is required. The rule is otherwise, however, where the same act constitutes two or more different offenses, and such different offenses are charged in separate counts of the same in-dictment. In the latter case the verdict should state upon which count the defendant is convicted for the purpose of showing the crime of which he is convicted. But no injury results to the de-fendant where the court on an indictment charging the same of-fense in different counts, requires that the verdict state the count

upon which the conviction is had; and the error, if any, is harmless.

The defendant makes the same complaint of the tenth instruction in which the court told the jury, "if you find the defendant guilty of murder, you will assess his punishment at, etc. * * *" It is hard to believe that this assignment is urged seriously. The use of the expression, "if you find the defendant guilty," does not indicate in the slightest degree any belief, opinion or desire in the mind of the court one way or the other as to what the verdict of the jury should be.

Lastly the defendant says that the court erred in failing to give the jury a clear, accurate and concise definition of *premeditated design* and of the term *without authority of law*.

The court in his seventh instruction defined premeditated design as follows:

"A design to effect death is premeditated within the meaning of the law if the intention to take life is deliberately formed in the mind before the act is done which results in death, no matter for how short a time. It may be formed instantly before committing the act by which it is carried into execution."

The defendant has pointed out no feature wherein this definition lacks clearness, accuracy or conciseness, and we hold it sufficient, especially in the absence of any request to the trial court that it be amplified.

The court did not in direct terms define to the jury the expression *without authority of law* as used in the definition of murder, but in instructions of which the defendant does not complain the court defined both justifiable and excusable homicide, and submitted those issues to the jury. Every homicide committed without legal justification or legal excuse is committed without authority of law; the court properly stated to the jury what constituted legal excuse and legal justification, and the instructions as a whole convey a correct understanding to any intelligent mind of what is meant by the expression, "without authority of law." Furthermore, the record shows no request on the part of the defendant for an instruction defining this term, no exception to the failure of the

court to define it; and the matter is not mentioned in defendant's motion for new trial. Even if error had been committed in that respect therefore, under the state of the record this court would not reverse on that ground.

This disposes of all of the defendant's assignments of error, and requires an affirmance of the judgment below.

There is one matter, however, to which we think attention should be called in an admonitory way, and that is the 17th instruction given by the court. It is as follows:

"You are instructed that it is the opinion of the court that there is no proof in the case justifying a conviction of the defendant of manslaughter in the second degree, that your verdict should be either guilty of murder, manslaughter in the first degree or not guilty; but notwithstanding this opinion of the court, you may if on your oaths you believe the defendant guilty of manslaughter in the second degree, convict him of that crime."

We disapprove this instruction. If there was no evidence introduced on either side tending to show that the homicide was manslaughter in the second degree, if under the evidence adduced the court could say as a matter of law that the defendant was either guilty of murder or manslaughter in the first degree, or else was innocent, then he should not have submitted to the jury the question of manslaughter in the second degree at all. *New v. Territory,* 12 Okla. 172, 70 Pac. 198; *Robinson v. Territory,* 16 Okla. 241, 85 Pac. 451; *Regnier v. Territory,* 15 Okla. 652, 82 Pac. 509. On the other hand, if the evidence in any manner justified the submission to the jury of the defendant's guilt or innocence of manslaughter in the second degree, then certainly it was error for the court to charge upon the weight of the evidence by informing the jury that in the opinion of the court the evidence did not warrant a conviction for that crime. In such case a jury might thereby be influenced to convict a defendant of one of the higher degrees of homicide, when otherwise they would find him guilty only of manslaughter in the second degree. Another vice in this instruction is the fact that it does not require the jury to find the defendant's guilt of the offense beyond a reasonable doubt to warrant a conviction.

The giving of this instruction, however, was not excepted to; it was not mentioned in the motion for a new trial, and has not been assigned or urged as error here. None of the evidence taken in the case was incorporated in the case-made except that introduced in support of the motion to set aside the indictment. So we know nothing about the issues made by the evidence. If in fact the evidence did not warrant the submission of manslaughter in the second degree to the jury, then the instruction was harmless; and from the defendant's acquiescence in the court's action, we presume that to have been the case. As the record stands, the giving of that instruction is not reviewable here as a ground for reversal; but we have thought it proper to express our opinion in regard to it to the end that future error may be avoided.

The judgment of the lower court will therefore be affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.